Good morning. May it please the court. My name is Andy Nelson. I'm an assistant federal defender in the District of Montana in the Missoula office, and I represent William Marlin on appeal. This appeal concerns judge found facts at sentencing, specifically in the context of loss amount following a fraud conviction. As the court is well aware, most sentencing enhancements need to be established by a preponderance of the evidence. At the other poll, judge found facts that increase the statutory maximum penalty we know following apprendi in that line of cases must be proven beyond a reasonable doubt. That's based on the Sixth Amendment right to jury trial. Somewhere in between those two extremes is a standard of clear and convincing evidence for a sentencing enhancement, where that sentencing enhancement has an extremely disproportionate impact on the ultimate sentence imposed. There are two problems with this I want to ask you to answer. One, didn't the judge say that whichever standard he applied, he would reach the same result? He did say that, Your Honor. He did. So is your attack on his finding that under the clear and convincing evidence standard that it was clear error or an abuse of discretion or whatever the standard is? Well, we've raised both issues on appeal, Your Honor. The first issue, of course, is that the district court erred in calculating loss amount, which is probably subsidiary to the second issue, which is that as a legal matter, he applied the wrong standard. But if he's saying he didn't apply the standard, he said that he applied both standards, and whichever standard he used, he would come to the same result? Well, my response to that, Judge, would be legal error is legal error. And what the cases say about the clear and convincing standard is that it sounds in due process, that there's constitutional underpinnings. When it's not clear that the offensive conviction relation... So you're not quarreling him with the choice of standard. You're quarreling with his application of the right standard. I'm quarreling with both, Your Honor. I believe he erred in applying the preponderance standard in this case. Then I see the same question again. What do you do with the fact that he said that whichever standard he applied, it would be the same result? I would argue that that distinction is... I have a lot of respect for Judge Malloy, and he's a fantastic judge. But to simply say that on the record does not negate the legal error of applying the wrong standard. It's very difficult to explain to Mr. Marlin, certainly. And my point in reference to... I don't understand that answer. Let's suppose that a judge says, you know, I read the case law only to require that I decide this on a preponderance of the evidence. But just to be safe, I'm actually in my mind now going to apply beyond a reasonable doubt. I'm not even going to make a finding that I am not convinced beyond a reasonable doubt. Here are my findings. And just the fact that the judge starts by saying, I don't think I have to do any more than preponderance, but in fact does, I don't understand where the prejudice could possibly come into your coin in that. And I understand, based on your hypothetical, Judge, the problem here is that there are distinguishing characteristics about this case that make the loss amount calculation erroneous in the first instance. They may be two sides of the same coin. You seem to be asking me about the structure of the argument. Just to be clear, he did say, but there is far more than clear and convincing evidence that the loss amount in this case is $2,662,050. I think the things that distinguish this case factually are the quarter of a million dollar checks written to other entities that were not identified in the charging documents  You're quarreling with the $250,000, right? The amount in dispute is the difference between the $2.6 million loss amount and the $1.1 million of restitution that was conceded, Your Honor. So it's our position that about a million and a half is that issue here. And the reason for that, as explained in the brief, is that the restitution amount was supported by contact with the individual investors. They said, yes, I was part of this fraudulent scheme. The reason that's significant here is that Mr. Marlin had prior legitimate endeavors, and so without contact from those witnesses, it's unclear whether they were part of the scheme of conviction. Is it your argument that the amount of restitution places a limit on the loss amount or just that the facts don't demonstrate the difference in this instance? The latter, Your Honor. Okay. In this case, as the chips fell, that difference was significant and a vast difference, and I found it interesting in the case that was noticed, the 28J Lorienti. In that case, the court dealt with these issues on the front end at the district court. The offense concerned 100 and some victims. They only interviewed and pursued 30 of those. That's what set the loss amount, and the loss amount was the same as the restitution amount. This case is starkly different. Well, it seems to turn on whether Starmax engaged in fraud also, and if it engaged in fraud also, then the loss amount is correct. I think there's no question that you're right. If it was not a legitimate enterprise either, then the rest falls into place. That's a very legitimate question. I would point out that the record reflects that some of the amounts deposited into Starmax accounts were ultimately used to calculate loss amount. However, before 2006, evidence in the record demonstrates that Starmax engaged in legitimate business endeavors, and so the problem here from a fact... What's the evidence in the record that supports that statement? Well, Mr. Marlin's allocution, for one. Anything else? Exhibits 1 and 2 at the sentencing hearing were used to track the money from 2006 onward. They did not go back to that period of time. Did he ever present any movies or anything like that that Starmax actually produced? Was that part of the record? Yeah. No, Your Honor. Maybe I'm misunderstanding here, but I thought that he essentially conceded that the 16-level enhancement was warranted. Correct. That's based on the $1.1 million restitution. And the dispute here was how do we get to the 18-level? Correct. And Judge Malloy said, I find that because only two levels is in dispute that the preponderance standard is appropriate. My argument in response to that would be twofold as articulated in the briefs. First, the raw dollar amounts are more than 150% difference with the $1.5 million. And secondly, boy, I just totally lost my train of thought, Judge, I apologize. What's the bump up from 16 to 18? Two levels. In the reply brief we point out, and the cases have not cut our way on this, and I acknowledge that, but I think a legitimate argument can be made that the very structure of the guideline supports the position that I don't think we have to take in this case. The sentence was in both, right, within both guidelines? I'm sorry, Judge, I don't know. The sentence was in both levels? The sentence was what, 121 months? The sentence was 121 months. One and lower the other. Correct, Your Honor. The drug table increases as drug amounts increase incrementally. In other words, the base offense level changes as the amounts get higher. In the loss context, it's the entire 18 or 16 levels that's at issue. It's a specific offense characteristic based entirely on the amount of loss. That's my argument as to why the entire amount is at issue. I realize that's an ambitious position. I don't think we need to take it in this case. But I would say analytically that it makes sense on the structure of the guideline alone and all the other factors that I've mentioned that the higher quantum of proof would apply, especially in cases like this one where the nexus between the charged and convicted conduct and the loss amount is not clear. I think that that's the hole in the donut in the cases in this circuit because normally there's not much analysis required. You're convicted of conspiracy. Here's what you did. Here's the dollar amount. Let me ask you two quick questions because you're over. One, is the amount from Starmax that's in dispute only amounts that were in the bank account after? Was it 2006? Or does it go back in the prior years, the deposits? I think Exhibit 1 and Exhibit 2 would demonstrate that from 2006 forward, the Starmax accounts were used. The confusing part about the quarter million dollars, Your Honor, is that those checks were actually found in the CFF account but were made out to Starmax. So there's some overlap. But the operable date for loss and restitution is 2006 forward. And some of it's Starmax and some of it's, most of it's the CFI? I would concede that the majority is children family films. And the rest is post-2006 Starmax? Correct. And some checks to Starmax and Cinetec that are in the CFF account. Yes. Yes, Your Honor. All right. Thank you. Thank you. We'll give you a minute for rebuttal. May it please the Court. I'm Ryan Archer, Assistant United States Attorney out of Billings, Montana, and I prosecuted this case below. The government's theory of loss in this case was never really that difficult. And Judge Graber, to address your statement earlier to my colleague here, whether or not we had to include all of the Starmax loss as loss in this case to determine that Starmax was a fraud, that's not quite the question in this case. The government's theory was that starting in January of 2006 to the end of the fraud, any funds that were written out to Starmax should be included as fraudulently obtained funds. And that's because of the testimony of Special Agent Greg Rice in the sentencing hearing that essentially Marlin admitted that he started children family films because the California Board of Corporations was shutting Starmax down at that point. They were investigating him. He had to open up children family films under an alias because if he used his real name, he'd basically be found out by the California Board of Corporations. And Special Agent Greg Rice also did an analysis of all of the Starmax funds subsequent to 2006 and found that none of those funds were spent on anything that could be called business expenses. There was no expenses to hire writers, no expenses to hire actors. In fact, most of them went to his William Marlin Corporation and were spent on furtherance of the scheme and on personal expenses. And so Starmax in itself actually collected a total of over $1.3 million in its operation, and we just drew that January 2006 line and said, okay, as of this date, you started children family films. We've received complaints against Starmax. You told some investors that Starmax presents children family films, and there's no question that all children family films funds were fraudulent funds. And so that's the level that we had there. And with regard to the preponderance of the evidence standard, as Your Honor pointed out, Judge Malloy said that he believes the preponderance standard applied, but he found clear and convincing evidence nonetheless. Are there any further questions? No, thank you, counsel. Thank you. All right. Case just started. Are you getting up to leave or are you coming? I'm here, Judge. No, no, I'm not complaining. I just wanted to. I'm here. I see the writing on the wall, but I will take just a tiny bit of your time. All right. In regard to the argument that it's the entire level amount that's at issue, there's some language in Treadwell, a recent case, that strongly suggests that that's been the analysis. It may be loose language. It's mentioned in the brief, and I merely reiterate it now. It is a legal question. I think it has some merit, and I think that it's fair to say that Treadwell recognizes that the cases in this area, how we talk about the nexus between the charge conduct and the loss amount is less than a model of clarity. Well, that's welcome to a lot of the law in the area. But I want, just out of curiosity, are you suggesting that you cannot count any funds that are not identified as a result of having contacted the victim? No, and I understand Mr. Archer's argument as to that, that I'm requiring a level of exactitude that the courts have not required. I think in this case, because of the existence of multiple entities and multiple checks to multiple entities and different accounts and the way that the loss amount was calculated in this case, that hearing from those people to say, yes, it was the children's family film scheme, there may have been other schemes, there may have been other legitimate enterprises, that that was required in this case on these families. All right. Thanks very much. Thank you. Thank you both. The case just argued will be submitted, and the court will take a brief recess before hearing the final case of the morning.
judges: Reinhardt, Graber, Paez